**NATIONAL LABOR RELATIONS BOARD
v. MAY DEPARTMENT STORES CO.**

No. 13094.

Circuit Court of Appeals, Eighth Circuit.

April 11, 1946.

Rehearing Denied May 20, 1946.

534

Malcom F. Halliday, Associate Gen. Counsel, National Labor Relations Board, of Washington, D. C. (David A. Morse, Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Ida Klaus and Isadore Greenberg, Attys., National Labor Relations Board, all of Washington, D.C., on the brief), for petitioner.

Milton H. Tucker and Robert T. Burch, both of St. Louis, Mo., for respondent.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The National Labor Relations Board has petitioned for enforcement of its order, 59 N.L.R.B. 976, against May Department Stores Company, on unfair labor practices at the Company's department store and warehouses in the city of St. Louis.[1] The Company asks that the order be set aside.

The Board found that the Company had been guilty of unfair labor practices under

section 8(1) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(1) and (3), in that (a) it was maintaining in force an unreasonable no-solicitation rule prohibiting any employee from soliciting another to join any organization (and so a labor union), anywhere on the Company's premises, at any time; (b) it had in 12 other specific respects[2] further interfered with, restrained or coerced its employees in the exercise of the rights guaranteed to them under the Act; (c) it also had made a discriminatory application of its no-solicitation rule against employees who had solicited memberships for a C.I.O.[3] union (the union which filed the present charges) in that it had ignored similar violations of the rule by an employee who had made solicitations on behalf of a rival A. F. of L.[4] union; and finally (d) it had made improper lay-offs and discharges of 7 C.I.O. union members through its discriminatory application of the no-solicitation rule, and in addition had wrongfully laid off or discharged 4 other employees for having joined the union.

The Board ordered the Company to cease and desist from the found and all other unfair labor practices under the Act; to rescind its rule against solicitation insofar as it prohibited union solicitation off the selling floor during nonworking hours; to reinstate the 11 employees discriminatorily laid off or discharged, with back pay; and to post appropriate compliance notices.

The Company's contentions, insofar as it is necessary to discuss them here, are

[1] The St. Louis store and warehouses are operated under the trade name of Famous-Barr Company.

[2] These consisted of various acts and statements, enumerated in the Board's findings, such as employing undercover agents to report on the organizational activities of employees; engaging in surveillance of employees' union activities by taking motion pictures and still photographs of leaflet distribution and picketing activities in front of the store; the congregating of store officials in one of the departments on the morning after practically all the employees in that department had joined the union in a body (the first department so to join); the scrutinizing by supervisors of employees in various departments, who were wearing union buttons, and purporting to make written notes; advising the employees generally that the President's

Order of October 3, 1942, No. 9250, 50 U.S.C.A. Appendix § 901 note, dealing with wage stabilization, barred the Company from granting wage increases negotiated through collective bargaining except with the approval of the War Labor Board, but permitted the Company to continue to grant individual wage increases without such approval; telling an employee he would not be given a wage increase so long as he belonged to the union and granting him an increase after he declared that he had resigned from the union or intended to do so; attempting in an address to the employees to link the union to alleged acts of vandalism which had occurred in the store, for the purpose of disparaging the union; and other incidents and expressions.

[3] Congress of Industrial Organizations.

[4] American Federation of Labor.

**536**

in substance (1) that the Board was not warranted in declaring the Company's no-solicitation rule unreasonable and improper; (2) that the modification in the rule ordered by the Board is so vague and unworkable as to be invalid; (3) that there is no substantial evidence to support any of the Board's findings of unfair labor practices; (4) that the proceedings before the Trial Examiner and the Board's adoption of them amounted to a denial of fair hearing and due process; and (5) that the cease and desist order is in any event too broad.

On its first contention, the Company argues that the no-solicitation rule represented the considered judgment of management on the restrictions necessary to the efficient conduct of its business, arrived at and formulated long previously and not in connection with any question of employee-organization; that the other department stores in St. Louis and such stores in other cities had similar no-solicitation rules; that labor itself had recognized such a rule as being valid—an A. F. of L. union having accepted and bound itself by the rule in an agreement made with the Company covering a small number of craft employees in the St. Louis store, and the C. I.O. union here involved having similarly, in collective bargaining agreements with other department stores throughout the country, accepted and bound itself by such a rule;[5] and that the Board itself had theretofore upheld the validity of such a rule in Matter of Marshall Field & Company, 34 N.L.R.B. 1.

We cannot, however, declare these considerations determinative on the Board in its task of balancing the right of management to conduct its business with efficiency and discipline in our free-enterprise system and the right of labor to organize and bargain collectively in a furthering of national industrial peace. In dealing with the various situations arising under the Act, the Board manifestly is entitled to establish general guides and principles, subject only to the limitation of appropriateness to effectuate the Act's purposes and of reasonableness in relation to all the rights involved. Cf. Wallace Corporation v. National Labor Relations

Board, 323 U.S. 248, 253–255, 65 S.Ct. 238, 241, 89 L.Ed. 216. The Board has established such guides and principles in dealing with no-solicitation rules, and their appropriateness and reasonableness have been recognized by the Supreme Court in Republic Aviation Corporation v. National Labor Relations Board, 324 U.S. 793, 801–803, 65 S.Ct. 982, 987, 988, 89 L.Ed. 1372, 157 A.L.R. 1081.

These guides and principles have perhaps most comprehensively been stated by the Board in Matter of Peyton Packing Company, 49 N.L.R.B. 828, 843, 844, as follows: "The Act, of course, does not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time. Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during working hours. Such a rule must be presumed to be valid in the absence of evidence that it was adopted for a discriminatory purpose. It is no less true that time outside working hours, whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property. It is therefore not within the province of an employer to promulgate and enforce a rule prohibiting union solicitation by an employee outside of working hours, although on company property. Such a rule must be presumed to be an unreasonable impediment to self-organization and therefore discriminatory in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline." See also Matter of United States Cartridge Company, 47 N.L.R.B. 896, 897, 898; Matter of Scullin Steel Company, 49 N.L.R.B. 405, 411; Matter of Republic Aviation Corporation, 51 N.L.R.B. 1186, 1187; Matter of LeTourneau Company of Georgia, 54 N.L.R.B. 1253, 1260.

For the Board to have tested the no-solicitation rule in this case on the basis of the presumptions and requirements of proof which it has thus established was therefore neither improper nor unreasonable. And, on the record, we are required to hold that the Board was warranted in

[5] The Board viewed the recognition made by a union of a no-solicitation rule in a collective bargaining agreement as normally being merely part of the "give and take" of the bargaining process, which would be binding on the union in the field of the particular contract, but which would not necessarily have any further implication or significance. See 59 N.L.R.B. 981, 982, footnote 17.

declaring, 59 N.L.R.B. at page 981: "The respondent has adduced no convincing evidence that such a blanket injunction [no union solicitation on any part of the premises at any time] bears reasonable relation to the efficient operation of its business. However, we do see reasonable ground for prohibiting union solicitation at all times on the selling floor. Even though both the solicitor and the person being solicited are on their lunch hour, for example, the solicitation, if carried on on the selling floor, where customers are normally present, might conceivably be disruptive of the respondent's business. We therefore find that the respondent's rule is invalid, and violative of the Act, only insofar as it prohibits union solicitation off the selling floor during nonworking hours (such as luncheon and rest periods)."

It is argued that the Board is retroactively overruling the Marshall Field & Co. case,[6] supra, 34 N.L.R.B. 1, and the Company, in being found guilty here of an unfair labor practice for having maintained its no-solicitation rule in force, is being unjustly condemned for a rightful reliance on one of the Board's own decisions, as to which there had been no previous indication of a change in the Board's position. But the Marshall Field & Company case expressly indicated that the Board was not at that time prepared to take a general position regarding no-solicitation rules and was limiting its decision to the particular case,[7] while the later decisions, to which we have referred above, made it clear; it seems to us, that the Board henceforward had determined to test no-solicitation rules generally on the basis of the presumptions and requirements of proof set forth in these decisions. The assertion that, because the later decisions had involved industrial plants, the Company could

hardly be expected to assume that the presumptions and requirements of proof also were intended to apply to department stores does not, we think, require further comment.[8]

On the Company's second contention, there equally is no basis for us to declare that the modification or rescission ordered by the Board in the Company's no-solicitation rule is so vague and unworkable as to be invalid. Under the Board's decision, the Company is entitled to prohibit union solicitation on the selling floor at all times, but it may not prohibit such solicitation off the selling floor by and of employees, all of whom are on nonworking time (such as established luncheon or permitted rest periods). The term "selling floor" can not be declared to be unworkably vague, for it obviously would appear to embrace those parts of the store where sales of commodities are made to customers in general course and to exclude those parts not so used and where customers normally are not present for such purposes. The Board's order does not presume to prescribe the parts of the store to which the employees must be allowed access for mutual contact during nonworking time, and the fact that the Company has chosen to allow its employees to use wash rooms and rest rooms open to the public, instead of private facilities, does not of itself therefore make the modification of the no-solicitation rule invalid.

On the Company's third contention, we also must hold that there is sufficient evidence to support each of the Board's material findings, within the tests applicable on reviews of the Board's orders, under the decisions of the Supreme Court. See National Labor Relations Board v. Nevada Consolidated Copper Cor-

[6] In that case the Board had declared, 34 N.L.R.B. at page 11, that "we are not prepared to say that, in the operation of a retail department store, it is violative of the Act to proscribe union activities on company time and property" but that "we * * * hold merely that there is not sufficient evidence in this case to show that the action of the respondent in adopting and enforcing the rule, under the circumstances here present, constituted interference with, or restraint or coercion of the respondent's employees in the exercise of the rights guaranteed in Section 7 of the Act."

[7] As the Board said in its present de-

cision, 59 N.L.R.B. at page 981, footnote 16, in referring to the Marshall Field & Company case, that decision "was expressly restricted to the circumstances present in that case."

[8] The Board observed as to the alleged difference in situation between an industrial plant and a department store, 59 N.L.R.B. at page 981, that it could perceive "no reasonable basis for distinguishing between the two types of enterprises so far as concerns a general prohibition against union solicitation by employees during nonworking hours at all places on the respondent's premises."

poration, 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305, reversing 10 Cir., 122 F.2d 587; N.L.R.B. v. Automotive Maintenance Machinery Co., 315 U.S. 282, 62 S.Ct. 608, 86 L.Ed. 848, reversing 7 Cir., 116 F.2d 350; N.L.R.B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; and the other cases cited in these opinions. The position of the Company fails to take sufficient account of the broad scope of inference open to the Board on questions of motive and discrimination, where the evidence indicates a desire to thwart or nullify unionizing efforts, either generally or as to a particular employee-organization. And the Company also overlooks the accreted force which conduct may acquire in its setting of totality, by attempting to focus separately upon each of the incidents. We have stated above that the evidence supports the Board's findings, and it can serve no useful purpose here to repeat its details. We shall discuss only one of the matters argued on the present contention—and that one because it is asserted to be controlling of itself on all of the 7 layoffs or discharges for union solicitation, and because it also is somewhat typical of the nature of other arguments made.

█ It is argued that there is no competent basis for the Board's finding that the Company discriminatorily applied its no-solicitation rule against members of the C.I.O. union in that it ignored similar violations of the rule in behalf of a rival A. F. of L. union. More specifically, it is said that there is nothing but uncorroborated hearsay to support the Board's statement that "the evidence shows, and we find, that employee Gilley openly solicited memberships for the A. F. of L. in various departments of the store during working hours, and that, though the attention of the respondent was called to Gilley's activities, it never reprimanded or disciplined her therefor."

The record shows that Gilley originally joined the C.I.O. union but a short time later began to wear a large A. F. of L. button—the A. F. of L. up to that time having apparently made only tempered efforts to gain adherents in the store. The C.I.O. union had undertaken to put on an aggressive campaign. The vice-president of the C.I.O. union, a store employee, testified that, after Gilley began wearing the large A. F. of L. button, he observed her from time to time approach various employees in the store during working hours; that

these and other employees, whose names he detailed, reported to him that Gilley was soliciting them to join the A. F. of L. and was continuing her solicitation; that Gilley herself told him, in a conversation outside the store, that she had become an A. F. of L. organizer and was being paid for getting members, and suggested that he also become such an organizer; that he had stated in a conversation with an assistant buyer of the store that Gilley was soliciting in the department for the A. F. of L. and the assistant buyer, according to his recollection, had replied that he knew it; that the C.I.O. union published and distributed a bulletin (of which the Company admitted having received a copy at the time) with a cartoon purporting to represent Gilley sitting on someone's lap and with this direct charge: "Was she (Gilley) afraid of getting fired for soliciting on store time? No, there was no danger if one solicited for the 'right' organization. In other words, she was saying the Protective Association (A. F. of L.) had the company's blessing"; and that a short time after this bulletin was distributed the general manager of the store was seen to go into Gilley's department, carry on a laughing conversation with her, and continue the jocularity as she walked up the aisle with him until he left the department.

Incidentally, the assistant buyer was not called to refute the testimony as to his remark and knowledge about Gilley's solicitation; no one undertook to explain why the Company made no reply or took no action in relation to the published charge that Gilley was soliciting with impunity because the A. F. of L. had "the company's blessing"; the general manager did not deny the conversational incident with Gilley following the publication of the bulletin or its connection with the union's accusation; and none of the employees named in the testimony of the vice-president of the union was called to deny Gilley's solicitation of them. In any event, the circumstances appearing in the testimony and their reasonable implicational significance were such that the Board's finding as to the discriminatory application of the no-solicitation rule cannot be said to rest on uncorroborated hearsay as to the reports made to the vice-president of the C.I.O. union concerning Gilley's solicitation.

█ In passing, we might also take occasion to observe that among the four individuals who were found to have been

laid off or discharged, not for violation of the no-solicitation rule but for having become members of the C.I.O. union, was a demonstrator named King, who demonstrated and sold the goods of a certain manufacturer which the store had purchased, and whose remuneration was paid by the manufacturer. The evidence showed, however, that the Company controlled the selection and the retention of all demonstrators in the store, required them to adhere to the discipline and other rules applicable to employees, and accorded them the same general privileges and perquisites as ordinary employees, such as purchase-discounts, right to join the employees' relief association, etc. For all practical purposes in the conduct of the business, the demonstrators seem in effect or equivalence to have been employees, whose services were donated by the manufacturers. In finding (on sufficient evidence) that the Company had caused the manufacturer to terminate King's services because she had joined the union, the Board also held that the Company was answerable for the discrimination against her, as an employer under the definition of section 2(2) of the Act, 29 U.S.C.A. § 152(2). On the legal question thus involved, the Company's brief here merely states: "This is a very interesting legal question as to which we do not agree with the Board. However, we do not think it necessary to argue this point or to challenge this order as to King simply on this technical legal ground." On this statement and with nothing more said, we regard the question whether the Company could be subjected to remedial relief (back pay, etc.), for having effected the termination of King's services as a demonstrator in the store because of her union membership, as being waived for purposes of this review and therefore requiring no consideration.

■ On the Company's fourth contention, that the proceedings before the Trial Examiner and the Board's adoption of them amounted to a denial of fair hearing and due process, we have carefully read the entire record for the atmosphere and course of the proceedings, and we find the contention to be without merit. The Trial Examiner properly manifested and exercised the courtesy, consideration, patience and restraint necessary on the part of a hearing officer. He accorded the parties liberal and equal scope in introducing evidence and cross-examining witnesses. Such incidental interrogation as he made of a witness from time to time was within legitimate bounds and is not entitled to be branded as "officious inter-meddling." And such a complaint by the Company is the less warranted here, because the parties were invited at the opening of the proceedings to make objections to any questions which he might chance to ask of witnesses and were assured that all such objections would be given due consideration. The evaluation which the Company now makes is not that which it apparently made at the time and in the setting of the trial.

■ The Company complains that some of the incidents of conduct on its part occurring prior to September 14, 1942, were made the basis of findings of unfair labor practices without proof of repetition of the specific conduct after that date. September 14, 1942, was the date of a settlement agreement between the Company and the Board on some previous charges of unfair labor practices. In the agreement the Company had stipulated that it would refrain from certain specified forms or types of previous conduct and also generally that it would not in any other manner interfere with, restrain or coerce its employees in the exercise of their rights under the Act. The evidence on the present hearing showed that the Company thereafter violated some of the provisions relating to specific forms or types of unfair labor practices and also the general prohibition in the agreement. The Board's policy, which it followed in its decision here, has been to treat violations of a settlement agreement by subsequent unfair labor practices, which indicate that the purpose of the settlement agreement has been thwarted, as entitling it to make the previous as well as the subsequent unfair labor practices committed the subject of an effectual order under the Act. The Supreme Court has upheld the Board's right so to do in Wallace Corporation v. National Labor Relations Board, 323 U.S. 248, 254, 255, 65 S.Ct. 238, 241, 89 L.Ed. ——. Cf. also Canyon Corporation v. N.L.R.B., 8 Cir., 128 F.2d 953, 955, 956.

■ But the Company asserts that it was unfair to apply this policy in the present case, because the expressions of the Trial Examiner had led it to believe that no incident of conduct prior to September 14, 1942, would be used as the basis for a finding or order against it unless proof was

made of a repetition of the specific conduct involved in the settlement agreement, and in reliance upon this belief it had not undertaken to offer any evidence in defense as to such antecedent incidents of conduct as were not proved to have been repeated. We fail to find in the expressions of the Trial Examiner anything which warranted such a belief on the part of the Company. At the start of the proceedings the Company moved to dismiss the complaint as to all unfair labor practices committed prior to the date of the settlement agreement, and the Trial Examiner in denying the motion stated the Board's established policy as follows: "The policy of the Board, in accordance with the decisions handed down by the Board, is that it will not consider any, of the unfair labor practices of Respondent prior to the entering into the settlement agreement, provided that the settlement agreement was not breached by the Respondent." He made a fuller statement of the rule, when the Company further sought in the early stages of the hearing to exclude all evidence of anything occurring prior to September 14, 1942, on the ground that it was "not admissible as background or anything else," by declaring: "As I stated at the beginning of the hearing, the Board will stand by any stipulation made by one of its agents, if immediately thereafter or shortly thereafter the Respondent did not commit any new unfair labor practices or continue the old unfair labor practices." He indicated that the application of the rule necessarily would depend upon the developments of the proof. It is difficult to see how the Company reasonably could have given these expressions of the Trial Examiner the construction for which it here contends, and especially so in view of the fact that the Board's policy had long theretofore been established and clearly declared in its decisions.[9]

Beyond this, however, if the Company has been prejudiced by its failure to make a defense to some of the presettlement incidents, as it asserts, it has in no way attempted to demonstrate that such is the fact. Neither before the Board itself, after the decision was handed down, nor here, on the Board's petition for enforcement, has it shown that it has any evidence which it could or would have attempted to offer as a defense. Hence, even if we were liberally to treat the general charge of prejudice in the Company's brief as in effect an application for leave to adduce additional evidence under section 10(e) of the Act, 29 U.S.C.A. § 160 (e), we would not be entitled to grant it, for under that provision of the statute it must be made satisfactorily to appear that additional evidence exists, that it is material, and that there were reasonable grounds for the failure to adduce it in the hearings on which the Board's order is based.

On the Company's fifth and final contention, that the Board's order is in any event too broad, the cease and desist provisions of the order are being set out in a footnote.[10] Paragraph 1(a) of the

9 See Matter of Harry A. Halff, 16 N. L.R.B. 667, 679–682; Matter of Locomotive Finished Material Company, 52 N. L.R.B. 922, 926–928. Thus, in the latter case the Board said, 52 N.L.R.B. at page 927, that "our administrative practice [of giving effect to settlement agreements] is limited to cases in which the employer himself abides by the spirit and purpose of the settlement agreement and discontinues all further unfair labor practices."

10 "1. Cease and desist from:

"(a) Discouraging membership in United Retail, Wholesale and Department Store Employees Union of America, affiliated with the Congress of Industrial Organizations, or in any other labor organization of its employees, by laying off, discharging, or causing to be discharged, or refusing to reinstate any of its employees, or by refusing to hire applicants for employment, or in any other manner discriminating in regard to hire or tenure of employment, or any term or condition of employment, or by withholding approval of the employment or causing the discharge of any demonstrator, or in any other manner interfering with the hire or tenure of employment, or any term or condition of employment, of any demonstrator;

"(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form labor organizations, to join or assist United Retail, Wholesale and Department Store Employees Union of America, affiliated with the Congress of Industrial Organizations, or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

order covers specific forms or types of unfair labor practices intended to discourage union membership, of which the Company was found guilty, and other conduct having a similar purpose. Paragraph 1(b) is a blanket prohibition against violating any of the guaranteed rights under section 7 of the Act, 29 U.S.C.A. § 157.

The prohibitions in paragraph 1(a) of the order, to prevent discouraging of union membership, are clearly proper. The Company says in its brief, however, that, when paragraph 1(a) is read literally, it is a prohibition against laying off or discharging any employee or refusing to reinstate any employee or refusing to hire applicants for employment or withholding approval of the employment of any demonstrator, for any and not alone for discriminatory reasons. Of course, such was not its intent, and any possible implication of that nature can be readily dispelled by merely adding at the end of such paragraph the clause "—where such acts are done for the purpose of discouraging membership in a labor organization." This modification will be made.

■■■ As to the blanket prohibition in paragraph 1(b), the Supreme Court has stated that it is the Board's province "to determine the needed scope of cease and desist orders under the National Labor Relations Act" and the function of the courts merely to test as a matter of law whether the scope of a particular order has a reasonable basis in the situation presented. May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 66 S.Ct. 203, 212, 213, 90 L.Ed. ——. "The test of the proper scope of a cease and desist order is whether the Board might have reasonably concluded from the evidence that such an order was necessary to prevent the employer before it 'from engaging in any unfair labor practice * * * affecting commerce.'" Id., 66 S.Ct. at pages 211, 212. The Board may not enjoin violation of the provisions of the Act generally merely because a violation of one provision has been proved. "To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past." National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 437, 61 S.Ct. 693, 700, 85 L.Ed. 930. But the situation may present such an attitude of opposition to the purposes of the Act as to warrant the Board in concluding that unfair labor practices generally, and not merely of the type involved in the immediate proceeding, are likely to occur and should be prevented. Where the Board can so reasonably conclude, the courts should not undertake to delimit its order.

■■■ In the present case, the acts of unfair labor practices which the Board found that the Company had committed were considerable in number and variety, as we have heretofore indicated. Two provisions of the Act had been violated—section 8(1) and 8(3), 29 U.S.C.A. § 158(1) and (3). There had been a previous proceeding involving violations by the Company of section 8(1) and 8(5). See Matter of May Department Stores Company, 53 N.L.R.B. 1366; National Labor Relations Board v. May Department Stores Co., 8 Cir., 146 F.2d 66; May Department Stores Co. v. N.L.R.B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. ——. A settlement agreement made with the Board prior to the present proceeding had been breached by the Company and additional unfair labor practices had been committed. On all these considerations, we cannot say that the Board could not reasonably conclude that a general prohibition was "necessary to prevent [the Company] 'from engaging in any unfair labor practice * * * affecting commerce.'"

A decree will be entered enforcing the Board's order, with the clause "—where such acts are done for the purpose of discouraging membership in a labor organization" added at the end of paragraph 1(a) of its cease and desist provisions.