**CENTRAL HARDWARE COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Retail Clerks Union, Local 725, Retail Clerks International Association, AFL–CIO, Intervenor.**

No. 20199.

United States Court of Appeals, Eighth Circuit.

March 24, 1971.

Rehearing Denied April 26, 1971.

Gibson, Circuit Judge, concurred in part and dissented in part and filed opinion.

Keith E. Mattern, St. Louis, Mo., Ronald L. Aylward, John F. Gillespie, St. Louis, Mo., for petitioner.

Marvin Roth, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N. L. R. B., for respondent.

Robert Karmel, Chicago, Ill., for intervenor.

Before GIBSON and BRIGHT, Circuit Judges, and McMANUS, Chief District Judge.

PER CURIAM.

The petitioner, Central Hardware Company, seeks review of the National Labor Relations Board's order (reported at 181 N.L.R.B. No. 74) and the Board files a cross-application for enforcement of the order requiring petitioner to cease and desist from unfair labor practices found to be violative of §§ 8(a)(1) and (3) of the National Labor Relations Act (29 U.S.C. § 158) and affirmatively requiring the petitioner to revoke and withdraw its no-solicitation rule and to reimburse employee Ragle for a three-day loss of earnings.

The actions found to be violative of §§ 8(a)(1) and (3) of the Act occurred during an organizational campaign by representatives of the Retail Clerks Union, Local 725, Retail Clerks International Association, AFL–CIO, intervenor, at petitioner's two stores in the Indianapolis, Indiana area in 1968.[1] The petitioner (hereafter called Company) opened two retail stores on the outskirts of Indianapolis, Indiana, in the spring of 1968. The stores were designated as the East Store and the West Store. Hiring was commenced about April 15, 1968, culminating with a work force of some 125 employees for each store at the time

1. The petitioner, Central Hardware Company, operated 10 retail hardware stores, 8 in the St. Louis, Missouri area and 2 in the Indianapolis, Indiana area. The petitioner is a Missouri corporation with its principal place of business in St. Louis, Missouri; thus jurisdiction is properly lodged in the Eighth Circuit (along with other circuits or districts) under §§ 10(e) and (f) of the National Labor Relations Act, as amended.

of the openings on June 3, 1968. The Board found the Union began an organizational drive a week or so before the stores opened, but the record shows that the Company hired Edward Stahl, Jr., in April 1968 as an employee, not knowing that Stahl was an undercover agent for the Union and was paid to work full time for the Union in organizing the Company's Indianapolis stores. Stahl received full time salary both from the Union and from the Company and utilized his position to talk to the employees and solicit them to join the Union. He was instrumental in supplying a list of the employees, 80 per cent complete, to the union organizers.

Some 9 or 10 union organizers from both outside and within the Indianapolis area conducted a blitz-type campaign seeking signed authorization cards to establish the Union as the bargaining agent for the employees of both stores. During the first month of the campaign, commencing May 21, 1968, the Union received 92 signed authorization cards, but during the next three weeks of the campaign the Union only received 17 signed authorization cards. The decrease in the number of signed authorization cards was apparently due to the removal by the Union of most of its outside organizers and a decrease in activity of Indianapolis organizers who had other regular union functions to perform in connection with other employers.

The organizational campaign took place primarily on the Company's parking lots. The Company had a no-solicitation rule which it enforced against all solicitational operations in the stores and in the parking lots. A number of employees protested to the Company concerning the union organizational activity on the parking lots, complaining that they were detained in leaving the lot and were threatened; they sought protection when leaving the store at night. This complaint was, at the suggestion of management, placed in written form signed by 97 out of 125 employees at one of the stores and was directed to an executive official at St. Louis, Missouri.

The signed complaint stated in effect that the undersigned employees did not want to be harassed any more by the Union and they did not wish to join this Union.

The Company accepted and expressed gratification for the complaint and instructed the Indianapolis management to keep all union organizers off the Company's premises, including the parking lots. After most of the Union's organizers had either left town or left the Company's premises, Mark Kapetanakis, a field organizer for the Union from Columbus, Ohio, and Stahl, the sub rosa union organizer, who had subsequently been discharged for cause, met on the lot of the West Store and started into the store. The store manager met them in the parking lot and told them he did not want them in the store or on the parking lot. Kapetanakis replied that he was going into the store as a customer and would not be talking to the employees about the Union. The manager again told Kapetanakis not to go into the store and if he did the police would be called. Stahl left but Kapetanakis went into the store. The police were called, talked to Kapetanakis and insisted that he leave the store. Upon refusal to leave he was placed under arrest, escorted to a police car and taken to the police station.

Shortly after the Company received the written complaint from the employees, it filed a charge of unfair labor practices against the Union. The Union in turn filed unfair labor practices against the Company on August 21, 1968, and on October 16, 1968. A combined complaint was filed by the General Counsel against the Company, the hearing of which was concluded on February 6, 1969. The Board found that the Company's employee no-solicitation rule was unlawfully broad and was discriminatorily applied, thus violating § 8(a) (1) of the Act; that interrogation of employees concerning a violation of the no-solicitation rule and the subsequent suspension of employee Ragle for violating that rule were violative of §§ 8(a) (1)

and (3) of the Act; that the absence of a reasonable opportunity for the Union to otherwise reach employees and the quasi-public nature of the Company's parking lots, coupled with the allegedly unlawful non-employee no-solicitation rule, violated § 8(a) (1) of the Act; and that the Company's interrogation of employee Ragle concerning her union sympathies and a speech by vice president Reed exceeded the permissible bounds of free speech, violating § 8(a) (1) of the Act.

## NO–SOLICITATION RULE

### A. Employees.

■ The Board found that the Company's employee no-solicitation rule was overly broad and was also discriminatorily applied in that the Company allowed anti-union solicitation while taking a strict stand against all other types of solicitation. Employee Ragle was suspended for three days for violation of the Company's employee no-solicitation rule. The Company's rule on employees' solicitation was quite broad and prohibited solicitations on the Company's premises without limitation as to time or place, in the absence of Company approval. It is evident that such a broad employee no-solicitation rule is invalid as constituting an interference with the employees' rights to concerted action. As a matter of congressional policy, employees under § 7 of the Act (29 U.S.C. § 157) have the right to organize and engage in concerted action for purposes of mutual protection and collective bargaining; and employees by an amendment of the Act in 1947 also have the right to refrain from such activity. Under § 8(a) (1) of the Act (29 U.S.C. § 158), an employer must respect an employee's § 7 rights and may not interfere, restrain or act coercively with respect to these rights.

■■ The Supreme Court in Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945) upheld the Board's authority to view overly broad employee no-solicitation rules as interfering with the employees' § 7 rights and thus constituting unfair labor practices under § 8(a) (1). Both the Board and the Court, in balancing the respective rights of management to conduct its own affairs and the employees to freely organize, recognized that the employer may make and enforce reasonable rules governing the conduct of employees on company time. Absent discriminatory factors, this would include prohibiting union solicitation by employees during working hours; but an employee's time outside working hours, even though on the company's premises, as during the luncheon hour, rest periods or after work, were his to use as he wishes, and the employees' activities during the non-working periods may not be unreasonably restrained. Republic Aviation Corp. v. NLRB, *supra* at 803, 65 S.Ct. 982. Therefore, any rule prohibiting employee union solicitation outside of working hours is viewed as an unreasonable impediment to self-organization and discriminatory, absent evidence that such a rule is necessary in order to maintain production or discipline.

■ An employer in the retail business may in addition prohibit employee solicitation in selling areas during non-working time as such solicitation could prove disruptive of the selling operation. However, the prohibition may not extend to the non-selling areas of the company's premises. NLRB v. May Department Stores, 154 F.2d 533, 537 (8th Cir.), cert. denied, 329 U.S. 725, 67 S.Ct. 72, 91 L.Ed. 627 (1946).

■ Also, even a valid no-solicitation rule, properly circumscribed as set forth above, may be violative of § 8(a) (1) if the rule is enforced in a disparate or discriminatory manner. NLRB v. Electro Plastics Fabrics, Inc., 381 F.2d 374 (4th Cir. 1967); Revere Camera Co. v. NLRB, 304 F.2d 162 (7th Cir. 1962); NLRB v. May Department Stores, 154 F.2d 533, 537 (8th Cir. 1946). It is thus clear that an employer violates § 8(a) (1) of the Act by a broad employee no-solicitation rule which prohibits union solicitation on all company property even during non-working periods and in

non-working areas. Republic Aviation, supra; Jas. E. Matthews & Co. v. NLRB, 354 F.2d 432 (8th Cir.), cert. denied, 384 U.S. 1002, 86 S.Ct. 1924, 16 L. Ed.2d 1015 (1966).

■ The overly broad no-solicitation rule of the Company (characterized as being a matter of company policy even before it was communicated to the employees of the East and West Stores) was violative of § 8(a) (1) of the Act. Although the Company had a right to prohibit employee solicitation on company time, the overbreadth of the rule constituted interference with the employees' § 7 rights of organization. With respect to employee Ragle, the Company never made clear to her what her rights were in respect to employee solicitation, and it appears that the Board's finding of a §§ 8(a) (1) and (3) violation for her three-day suspension is supported by substantial evidence on the record.

B. Non-Employees.

We next consider the Company's no-solicitation rule barring non-employee union organizers from contacting Company employees on Central Hardware's business premises, including its parking lots. Each of the Company's stores has a parking lot located in front of and along one side of the store. The store employees park in specified areas of the lots, which accommodate about 350 cars. Other smaller businesses located nearby provide their customers with separate parking facilities. Only Central Hardware's employees and customers use the parking facilities provided at each of their two stores.

The Board made no specific finding concerning oppressive solicitation tactics practiced by union organizers in these parking lots. It did, however, specifically find that petitioner Central Hardware had made its lots accessible to the public without limitation. Applying principles enunciated in Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L. Ed.2d 603 (1968), and Solo Cup Company, 172 N.L.R.B. No. 110 (1968), the Board declared the Company's non-employee no-solicitation rule overly broad and found its enforcement in the instant case to be violative of § 8(a) (1).

The Company contends that restricting the use of the lots for customer and employee parking preserved the "private property" characteristics of this parking area. It argues that the area did not become available for general use by the public or for special use by union organizers. The Company alleges that since the Union failed to show that the employees were beyond the reach of reasonable union efforts to communicate with them, the record furnishes no basis for a § 8(a) (1) violation in enforcement of this non-employee no-solicitation rule. On this petition for review, the Company relies upon NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), and the fact that the Board's determination in Solo Cup, supra, was subsequently reversed in NLRB v. Solo Cup Company, 422 F.2d 1149 (7th Cir. 1970). We briefly examine the background and circumstances of those cases. In Babcock & Wilcox Co., supra, the Court determined that an employer's refusal to permit distribution of union literature by non-employee union organizers on the company-owned parking lots did not constitute a § 8(a) (1) violation. There, the parking lots adjoined the fenced-in plant areas. In Babcock & Wilcox Co., the Court emphasized the fact that other channels of communication were available to the union organizers which would enable them to get their message to the employees. Mr. Justice Reed, speaking for the Court, observed:

* * * [A]n employer may validly post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message and if the employer's notice or order does not discriminate against the union by allowing other distribution. * * *

\* \* \* \* \* \*

\* \* \* The right of self-organization depends in some measure on the ability of the employees to learn the advantages of self-organization from others. Consequently, if the location of the plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them, the employer must allow the union to approach his employees on his property. No such conditions are shown in these records.

\* \* \* Though the quarters of the employees are scattered they are in reasonable reach. The Act requires only that the employer refrain from interference, discrimination, restraint or coercion in the employees' exercise of their own rights. It does not require that the employer permit the use of its facilities for organization when other means are readily available. [351 U.S. at 112–114, 76 S.Ct. at 684–685]

In NLRB v. Solo Cup Company, *supra,* the Seventh Circuit followed the rationale of *Babcock & Wilcox Co.,* and rejected the Board's determination that an industrial park containing plants of eight companies, including Solo Cup, constituted a quasi-public area open to the public as well as to union organizers seeking support from Solo Cup's employees. In distinguishing these circumstances from those in *Logan Valley Plaza, supra,* the court said:

> While there were no fences surrounding the area and no guards were posted at the entrance to the [Industrial] District, the District was still private property and not open to public use. \* \* \* None of the companies located there held itself out as being open to the public, and the general public had no reason to enter the area. [422 F.2d at 1151]

The issue in *Logan Valley Plaza* arose in a First Amendment context. There, Weis Markets, Inc. occupied a supermarket building in a large, newly developed shopping center complex, known as the Logan Valley Mall. Weis opened for business, employing a wholly non-union staff of employees, and shortly thereafter the union commenced picketing in and around the parcel pick-up area which extended along the front of the supermarket. The union pickets carried signs indicating that Weis employed non-union labor and that Weis' employees were not receiving union wages or benefits. Weis and Logan Valley Plaza obtained an injunction against this picketing in the Pennsylvania state court. The state court enjoined the pickets from trespassing on the property adjacent to the supermarket, the parking lot of the shopping center, and the parking lot entrances and exits. The Pennsylvania Supreme Court affirmed the issuance of the injunction on the ground that the pickets had trespassed under state law. The United States Supreme Court reversed that judgment, holding that a state, by the use of its trespass law, could not bar picketing in the shopping center area. The Court began with the premise that the First and Fourteenth Amendments forbid a state from prohibiting peaceful picketing in a place generally open to the public, absent special factors relating to the purpose or manner of the picketing. The Court likened the circumstances to that of the company town in Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), commenting:

> "\* \* \* In short the town and its shopping district are accessible to and freely used by the public in general and there is nothing to distinguish them from any other town and shopping center except the fact that the title to the property belongs to a private corporation." 326 U.S. at 502–503 [66 S.Ct. at 277] [391 U.S. at 317, 88 S.Ct. at 1607.]

The Court held:

> All we decide here is that because the shopping center serves as the community business block "and is freely accessible and open to the public in the area and those passing through," Marsh v. Alabama, 326 U.S. at 508,

66 S.Ct. 276, the State may not delegate the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put. [391 U.S. at 319–320, 88 S.Ct. at 1609.]

■ We start from the premise that peaceful picketing carried on in a location generally open to the public is, absent special factors involving the purpose or manner of the picketing, protected by the First Amendment. We think it clear that union organizers in soliciting support through peaceful picketing exercise First Amendment rights. The essential distinction between *Babcock & Wilcox Co.* and *Logan Valley Plaza* rests upon a determination as to the use of the properties in question.

In the instant case, the Board noted that the "enclaves in which respondent's stores are located also contain other business enterprises"; that no fences, gates, guards or signs bar anyone's use of the premises and that the premises in question are "accessible to the public without limitation." This situation more nearly resembles the circumstances presented in *Logan Valley Plaza* than those presented in *Babcock & Wilcox Co.* The Board here found Central Hardware's parking lots to be generally open to the public, to have "a quasi-public status." The record, as a whole, furnishes adequate support for this finding which then binds us upon our review. 29 U.S.C. § 160(e). See NLRB v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ Under the mandate of *Logan Valley Plaza*, we hold the Company's non-employee no-solicitation rule to be overly broad as applied to its parking lots. Thus, we sustain the Board's determination that the Company's enforcement of this rule against the Union constituted an unfair labor practice in violation of § 8(a)(1) of the Act.

## OTHER ALLEGED UNFAIR LABOR PRACTICES

■ The Board, contrary to the Trial Examiner, viewed Union representative Kapetanakis' arrest as an unfair labor practice. We think this finding lacks substantial support in the record. The Company had the right to bar Kapetanakis from the store; he was not a bona fide customer and his primary purpose in entering the store was to check employees, thus disrupting selling areas.

The Board also found the Company committed an unfair labor practice in a speech where vice president Reed told the employees they were receiving greater benefits than those paid to employees in comparable unionized stores and that if the employees were to select the Union as their collective-bargaining representative "all bets are off and we start from scratch." The Board views these statements as being made in the context of "other substantial unfair labor practices as constituting a promise that existing benefits would be continued and increased if the employees refrained from supporting the Union and also as a threat that they would be discontinued or minimized if the Union was supported."

■ The Board acknowledges that the employer is free to communicate its views respecting a union or union representation. If the employer's right of free speech is to be permitted and made meaningful, the employer as well as the union organizers should be allowed to communicate opinions and ideas on the relative merits of the collective bargaining process and the particular union in issue. This the employer may do as long as his statements do not contain "a threat of reprisal or promise of benefit." NLRB v. Gissel Packing Company, Inc., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). There is no threat of retaliation and the words

spoken do not appear to contain any promises or threats. The employer certainly is entitled to state that its employees are currently being better treated than comparable unionized employees and also to convey the legal facts of life that if a union is voted as the bargaining representative the employer must bargain with the union rather than offer increased benefits directly to the employees.

The real test here is whether the employees could reasonably conclude that they were being threatened with economic reprisal. NLRB v. Louisiana Manufacturing Company, 374 F.2d 696 (8th Cir. 1967). There is no evidence that any employees were so intimidated and the entire speech itself appears to be within the permissible limits of § 8(c) (29 U.S.C. § 158(c)). During the course of his speech, vice president Reed stated that the Company recognized the rights of the employees to determine for themselves if they would like to organize and, after presenting his arguments against the Union's efforts, concluded, "Let me say again that the decision to organize rests with each and everyone of you on an individual basis." Neither this speech nor the subsequent actions of the Company give rise to a valid conclusion that the Company was threatening reprisal or promising benefits over and beyond the permitted general statements that the employees would be better off without selecting the Union as their bargaining agent, which in turn is merely a counter statement to the Union's position that the employees' benefits and conditions of employment would be bettered by joining the Union. There was no specific promise of an immediate increase in benefits by not supporting the Union.

The Board also found supervisor Cavellier's question to employee Ragle as to whether she would "like to have the Union in here" constituted an unfair labor practice. The Trial Examiner did not think so and neither do we. The interrogation was certainly not coercive and merely constituted an isolated questioning of an employee. There was no systematic intimidation nor any coercive connotation to this isolated interrogation. Beaver Valley Canning Company v. NLRB, 332 F.2d 429 (8th Cir. 1964).

In conclusion, we therefore hold that the Company committed an unfair labor practice in its overly broad no-solicitation rules and in the three-day suspension of employee Ragle, and the Board's order with respect to those items is ordered enforced. The balance of the Board's order lacks substantial support in the record and enforcement thereof is denied.

GIBSON, Circuit Judge (concurring in part and dissenting in part):

I concur with all of the per curiam except that portion of the opinion holding the Company's non-employee no-solicitation rule to be overly broad as applied to its parking lots.

The majority views *Logan Valley* as modifying *Babcock*, thus giving union organizers free access to any company premises that are quasi-public in character. They apparently equate solicitation by the union organizers to picketing—an equation which I cannot make—for the record does not disclose picketing activity by the union organizers. This is a critical distinction which the majority fails to discuss. The *Logan Valley* decision approved peaceful picketing as a protected First Amendment right on property maintained as a shopping plaza for the benefit of a number of different retail outlets and the public, noting that where an owner places his property in public use, the owner's rights are circumscribed both by statutory and constitutional rights of those who use the property. In my view, the union picketing in *Logan Valley* is a distinctly different type of communicative activity from the union solicitation activity in the instant case. The First Amendment interest in protecting peaceful picketing is obvious since picketing has as its objective the conveyance of a message to the public, but is considerably less clear here where

the union's solicitation message is directed solely to the company employees and is imposed by confrontation and argument (to which some employees objected). Consequently, I view this question as limited to the statutory rights of union organizers to communicate with employees and conclude that the standards articulated in *Babcock*, rather than *Logan Valley*, are controlling.

Furthermore, I do not think *Logan Valley* is applicable because the parking lots in the instant case were not of such a public character that the owner lost or waived almost all rights of control over their use. The Trial Examiner's and the Board's characterization of the parking lots as equivalent to shopping centers is not warranted by the evidence. These parking lots were solely for the benefit of the employer's customers and employees. They were not set up for the purpose of allowing "one-stop shopping." They were not public squares or the equivalent and they did not create a *"cordon sanitaire."* These parking lots were set up and maintained for the sole purpose of supporting the employer's business and none other. The fact that a few small stores were adjacent to the lots would not alter their character into that of a shopping center operation. In no sense of the word are these private parking lots (maintained for employees and potential customers) public streets, public squares, public parks or their equivalents.

In *Babcock* the Supreme Court held that a company can lawfully post its property against non-employee solicitation (1) "if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message" and (2) "if the employer's notice or order does not discriminate against the union by allowing other distribution." 351 U.S. at 112, 76 S.Ct. at 684. Utilizing this standard, I must conclude that the Company's non-employee no-solicitation rule is lawful.

With respect to the first aspect of the *Babcock* test, there is no substantial evidence in the record showing that the employees were inaccessible or that reasonable attempts to communicate with them were ineffective. The Union had a list of employees 80 per cent complete and had for a period of time an inside organizer; and it otherwise had unrestricted access to contact the employees at their residences. The Union could invite the employees to any union or organizational meeting and had open many of the conventional means of communication, mail, telephone, personal contacts, etc. The burden was not on the Company to show that conventional means of communication and access were open, but the contrary burden rests with the General Counsel. This is not a case of the company town controlling all avenues of access and meeting places, *cf.* NLRB v. Stowe Spinning Co., 336 U.S. 226, 69 S.Ct. 541, 93 L.Ed. 638 (1949); or a resort hotel where the employees live on company premises, NLRB v. S & H Grossinger's, Inc., 372 F.2d 26 (2d Cir. 1967); or a lumber camp where employees live on the company's premises, NLRB v. Lake Superior Lumber Company, 167 F.2d 147 (6th Cir. 1948). The mere fact that it would be much more convenient for the Union organizers to meet with employees and accost employees on the Company's parking lots is insufficient to invalidate the non-employee no-solicitation rule under the rule enunciated in *Babcock*.

Applying the second part of the *Babcock* test to the instant case, I find that while the Board found that both the employee and non-employee no-solicitation rules were discriminatorily applied, the record does not contain substantial evidence that the non-employee no-solicitation rule was discriminatorily applied. There is no evidence of any non-employee solicitation being permitted or sanctioned by the Company. This finding is drawn from thin air, completely devoid of factual substantiation.

The majority opinion, which in effect appropriates and directs the use of the Company's parking lots for union organizational purposes, goes far beyond *Lo-*

*gan Valley*; it sanctions trespass and impairs personal and property rights on the altar of collectivism. The result reached by the majority is an improper balancing of the rights of management to reasonably control its private property and the rights of employees to organize; it is neither warranted by law nor supported by substantial evidence in the record. I would not order enforcement of this segment of the Board's order.