**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LONGHORN TRANSFER SERVICE, INC., Respondent.**

No. 21347.

United States Court of Appeals
Fifth Circuit.
June 15, 1965.

Warren M. Davidson, Atty., N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Arnold Ordman, Gen. Counsel, Leo N. McGuire, Atty., N. L. R. B., Washington, D. C., for petitioner.

James J. Loeffler, Houston, Tex., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel, for respondent.

Before HUTCHESON, BROWN and GEWIN, Circuit Judges.

HUTCHESON, Circuit Judge.

This is a proceeding to enforce an order of the National Labor Relations Board pursuant to Sec. 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(e). The Board found that respondent violated Section 8(a) (1) of the Act by coercively interrogating its employees concerning their union activities, by refusing to give a promised wage increase because the employees had joined the union, by threatening reprisals, including discharge against union adherents, and by enlisting the aid of employees to work against the union and for the company. The Board also found that respondent violated Section 8(a) (3) of the Act by discriminatorily discharging union leader McCardell at the height of the union campaign. It adopted the findings, conclusions and recommended order of the Trial Examiner. 144 NLRB No. 91. The Board's order requires respondent to cease and desist from the unfair labor practices found, to reinstate McCardell with back pay, and to post an appropriate notice.

Employee McCardell apparently spearheaded the drive to bring the union [1] into respondent's business. He contacted its business agent initially and got thirteen other employees to sign union authorization cards, after which they named him their chief spokesman. Following the initial union meeting a telegram was sent to company president Hahn, asserting the union's representation of a majority of the company's twenty-five employees and listing the names of the fourteen men who had signed union authorization cards. McCardell's name headed the list. Hahn received the telegram the night of October 11, 1962. The charged activities began the next day. According to credited testimony Hahn called employee Patrick to his office, told him that he had seen his name on the telegram and that he could help Patrick but that the union could not. Two days later, in the company warehouse Hahn asked employee Leslie about the union and who its instigator was. He asked employee Davidson what he was griping about and insisted

1. General Drivers, Warehousemen and Helpers Local Union No. 968 affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

that he state his complaints to Hahn. A couple of days later he again spoke to Leslie and asked him to talk to the other employees about forgetting the union. A few days later he inquired as to whether Leslie had talked to them and upon being told that he had not, retorted that "One of these days you fellows might be sorry". On November 2, when Leslie, McCardell and one Denkins went to Hahn's office for their paychecks, Hahn said, "Well, you guys know that you got this union roused up", and threatened, in effect, that there would be some discharges, ending with the statement, "and you know who it's going to be".

After the representation election was held, Hahn announced the results to a group of his employees saying, "The Union won 14 to 11. But that don't mean that you'll tromp on me". Then, according to credited testimony, he asked employee Davidson about an incident with his truck and, after his reply, called him a liar. He then told the dispatcher to watch Davidson and to tell Hahn everything he did because Davidson would be be the first s.o.b. he'd fire.

In November 1961, Hahn had promised the men two pay raises, one to become effective in February 1962, and the second in November, 1962. The employees received the first raise, but not the second. According to credited testimony Hahn told Leslie and employee Patrick that he couldn't give the second raise "on account of the Union—if it hadn't been for the Union, you'd get your other raise".

Union leader McCardell had been employed by respondent for three years at the time he was discharged. During this period he had been involved in several incidents including damage to his truck, loss of goods, and personal injuries to himself. He apparently had never been formally reprimanded in writing for any of these occurrences. On October 8, McCardell's parked truck rolled down an incline and struck a building doing $200 damage. On October 17, nine days after the accident and six days after the un-ion's telegram listing McCardell as one of its adherents had been received, Hahn called McCardell to his office and reprimanded him for a number of past incidents, including the building damage, and warned him that if he had another accident he would be discharged. He placed a record of reprimand in McCardell's personnel file containing the notation, "Final warning, next incident will be discharged".

On November 9, McCardell violated a company rule by leaving his truck parked down the street from the company office instead of in its assigned parking place, and by leaving the keys and a tarp in it when he had completed work for the day. On learning of McCardell's action, Hahn said, "He think[s] cause he gc' the Union going on he can do anything he wants to, but I've got news for him". On the next working day, McCardell was discharged.

█ Our duty is to determine whether there is substantial evidence on the record as a whole to support the Board's findings that respondent violated Section 8(a) (1) and Section 8(a) (3) of the Act. E. g., Schwob Mfg. Co. v. N. L. R. B., 297 F.2d 864 (5th Cir. 1962). The record is replete with the conflicting testimony, faulty memories, and general disagreement about what was said, common to such cases. We, however, are not the fact-finder whose function it is to accept or reject, credit or discredit, conflicting versions of factual events and the inferences to be drawn from them. N. L. R. B. v. McGahey, 233 F.2d 406 (5th Cir. 1956). That is the function of the Trial Examiner and the Board, and on the facts as they found them, we have no doubt that respondent's activities constituted a violation of Section 8(a) (1) of the Act. N. L. R. B. v. Collins & Aikman Corp., 338 F.2d 743 (5th Cir. 1964) ; N. L. R. B. v. Moore Dry Kiln Co., 320 F.2d 30 (5th Cir. 1963) ; Ken-Lee, Inc. v. N. L. R. B., 311 F.2d 608 (5th Cir. 1962) ; N. L. R. B. v. Griggs Equipment, Inc., 307 F.2d 275 (5th Cir. 1962). We do think that it is probable that respondent's failure to grant the second pay increase was due to

economic difficulties of the company at the time, rather than to anti-union animus, but this is not controlling if, as the credited testimony shows, Hahn told the employees that the union was the reason it was not granted. It is enough that the statement was in fact made, without regard to whether or not the explained reason was the real reason the raise was not forthcoming. These statements themselves "established without doubt that both in form and purpose their effect was to discourage and frustrate the statutory right of the employees freely to organize and bargain collectively." N. L. R. B. v. Ferguson, 257 F.2d 88, 90 (5th Cir. 1958).

■ As to the 8(a) (3) charge, the evidence although more equivocal, meets the test of substantial evidence to support the Board's finding. Respondent strongly urges that it had just cause to discharge McCardell for his violation of the company rule concerning disposition of his truck upon completion of the day's work, and that this violation was the reason for his discharge. It is, of course, true that "[m]anagement can discharge for good cause, or bad cause, or no cause at all", without violating the Act, N. L. R. B. v. McGahey, 233 F.2d 406, 413 (5th Cir. 1956), but if the discharge is because of union activity, a violation occurs. Certainly union activity or membership confers no immunity against discharge, N. L. R. B. v. Dell, 283 F.2d 733, 736 (5th Cir. 1960), but if the discharge was because of union activity it violates 8(a) (3). Ken-Lee, Inc. v. N. L. R. B., 311 F.2d 608, 611 (5th Cir. 1962).

■ It is always difficult to determine the motive of management in discharging an employee where there appear to be two possible reasons for discharging him, one legal, the other illegal. McCardell's violation of the company rule provided ample reason for his discharge. It is also clear that his discharge could constitute an effective weapon against the union, since it occurred during the height of the organizational campaign in which he played a key role. Obviously the discharge of a leading union advocate is a most effective method of undermining a union organizational effort. We have repeatedly held that "if the discharge is because of union activity it is a violation of the Act even though a valid ground for dismissal might exist." E. g., N. L. R. B. v. Linda Jo Shoe Co., 307 F.2d 355, 357 (5th Cir. 1962).

■■ The evidence clearly points to the conclusion that McCardell was discharged for his union activity. He had been involved in several incidents, but never formally reprimanded until the one in which his truck rolled down an incline damaging a building. He was not reprimanded for that incident until nine days after it occurred, and significantly, six days following the receipt by company president Hahn of the telegram listing the union adherents with McCardell's name at the top of the list. Upon learning of the company rule violation which allegedly precipitated the discharge, Hahn said, "He think[s] cause he got the union going on he can do anything he wants to, but I got news for him". The next working day McCardell was discharged. Hahn's anti-union animus is clearly established, as is the fact that he knew of McCardell's support for the union. There had been previous threats that someone would be discharged and McCardell was. A consideration of the entire record provides sufficient evidence of discriminatory motivation to support the Board's finding that the discharge violated Section 8(a) (3). As we have repeatedly held, where "there are two grounds for discharge, one proper and the other unlawful, and the evidence as a whole would make the inferences as to which was the motivating cause reasonably equal, the conclusion reached by the Board should be sustained." N. L. R. B. v. Hudson Pulp & Paper Corp., 273 F.2d 660, 666 (5th Cir. 1960); N. L. R. B. v. The Newton Co., 236 F.2d 438, 445 (5th Cir. 1956); N. L. R. B. v. Fox Mfg. Co., 238 F.2d 211, 215 (5th Cir. 1956). On the evidence in this record, the Board's finding certainly must be sustained.

■ We find the respondent's additional contentions that it was denied due

process of law because of bias on the part of the Trial Examiner, erroneous findings and credibility determinations, and evidentiary rulings, without merit.

The order of the Board is hereby enforced.