**WILLIAM L. BONNELL COMPANY,
Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 25489.

United States Court of Appeals
Fifth Circuit.

Jan. 17, 1969.

Frank A. Constangy, Constangy & Prowell, Atlanta, Ga., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Julius Rosenbaum, Atty., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate Gen. Counsel, Paul J. Spielberg, Atty., for respondent.

Before BELL, COLEMAN, and MORGAN, Circuit Judges.

BELL, Circuit Judge:

This case comes to us on the petition of the employer to set aside an order of the Board and on the cross-petition of the Board to enforce its order. The order involves findings that the employer violated § 8(a) (3) and (1) of the Act in discharging five employees in 1966 during the course of a union organizing campaign in its Newnan, Georgia plant. Three employees, Gable, Robertson, and Hannah, were discharged for violating a no-solicitation rule during working time. The rule in question was posted for a short time some two years before.[1] The posting took place during a 1964 union campaign. Two employees, Wyche and Young, were discharged a few days after a variation of the same no-solicitation rule had again been posted.[2] The Board also found a § 8(a) (1) violation in the interrogation of employee Young. 29 U.S.C.A. § 158(a) (1) and (3). In addition to disputing these findings, the employer contends that the bias of the Trial Examiner was such that it was denied a fair hearing.

█ We have considered the fair hearing question. It is true that the Trial Examiner made factual errors but they were corrected by the Board. This was a normal part of the review process and does not *ipso facto* demonstrate bias. It is enough to say that it is clear from our study of the proceedings that the employer was not deprived of a fair hearing. See NLRB v. Transport Clearings, Inc., 5 Cir., 1962, 311 F.2d 519, 522.

█ The finding of a · 8(a) (1) violation is supported by the record. Employee Young was interrogated by a fore-

man with respect to whether he had ever worked for a union, whether anyone had asked him to sign a union authorization card, and the same foreman also asked him how he felt about a union. Young responded in the negative as to each inquiry. He had, in fact, signed a union card. He was then called into the office of the general foreman and asked how he felt about a union in the plant. He avoided an answer and the general foreman indicated to him that the company was opposed to being organized. He was then asked whether anyone had asked him to sign a union card and he again replied in the negative.

█ A basis for an inference of coercion must be found if this section of the Board's order is to be enforced. The company was engaged in resisting the union effort as it had a right to do. NLRB v. Southwire Company, 5 Cir., 1965, 352 F.2d 346, 349. On the other hand, Young was reminded, during his interview with the general foreman, of the discharge of the three employees two days before for soliciting for the union. And as will be seen, we uphold the Board in its conclusion that these discharges violated the Act. This company activity might be considered coercive. The second interrogation of Young, which took place after a summons to the office of the general foreman, also supports an inference of coercion. We hold that the Board was justified, in light of these facts, in finding employer interference with the § 7 rights of Young through interrogation proscribed by § 8(a) (1) of the Act. See the test for finding violative non-threatening interrogation enunciated in NLRB v. O. A. Fuller Super

1. The notice, dated October 16, 1964, read:
   "All solicitations during working time which interfere with the work of any employee are prohibited. No person will be allowed to carry on union organizing activities in the plant during his working hours. Anybody who does so and thereby interferes with his own work or the work of others will be discharged."

2. The reposting of August 3, 1966 read:
   "To all employees:

   "Yesterday, it became necessary for us to enforce our rule against carrying on union organizing activities in the plant during working hours. For your information, we are reposting this rule:
   "No person will be allowed to carry on union organizing activities in the plant during his working hours. Anybody who does so and thereby interferes with his own work or the work of others will be discharged."

Markets Inc., 5 Cir., 1967, 374 F.2d 197, at p. 203.

With respect to the employee discharges, we can assume *arguendo* that the employer had in force a general no-solicitation on working time rule. We can further assume that it had existed for several years.[3]

We treat the 1964 rule promulgation as being a refinement of the existing general no-solicitation rule to merely call attention to union activity solicitation. The 1966 rule can also be so considered although it, in terms, applied only to solicitation for the union. However, even this posture of the case is of no avail to the employer.

■■ This is so because of the settled law that an employer may not enforce a no-solicitation rule against union activity while, at the same time, permitting substantial solicitation of other types in the plant. Given such a set of facts, and that is the case here, it follows that a finding by the Board that the no-solicitation rule was posted and enforced to impede union organization rather than to promote legitimate interests of production and order must stand. See NLRB v. Hill & Hill Truck Line, Inc., 5 Cir., 1959, 266 F.2d 883, 886; NLRB v. Peyton Packing Co., 5 Cir., 1944, 142 F.2d 1009; NLRB v. Electro Plastic Fabrics, Inc., 4 Cir., 1967, 381 F.2d 374, 376.

■ The evidence in this record is more than adequate to sustain the position of the Board of discriminatory enforcement of the no-solicitation rule. There was wide spread solicitation in the plant for various purposes, even by supervisory officials, and a complete lack of enforcement of the no-solicitation rule except as to selling lunches in the plant. The solicitation was in the form of raffles for an automobile, shotguns, watches, toasters and hams; chances in baseball pools, flower funds and help for the

sick in addition to regular civic drives such as United Appeal, blood bank and the like. The first three employees discharged were given no warning whatsoever that the company intended to enforce the rule. They were simply discharged out of hand.

As to the last two discharges, the employees were in flagrant disregard of the reposted rule. If they are to be saved, as the Board has saved them, the saving must rest on the proposition that the rule was posted simply to impede the organizational activity of the employees. Again the record makes out such a case.

■■ The policy of the law with regard to no-solicitation rules fully recognizes the importance of protecting the legitimate interests of employers in the areas of plant order and efficient production. Republic Aviation Corp. v. NLRB, 1945, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed 1372; NLRB v. Avondale Mills, 5 Cir., 1957, 242 F.2d 669, aff. sub nom. NLRB v. United Steelworkers, 1958, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383. Wherever no-solicitation rules have been promulgated and enforced either across the board or with minor well-defined exceptions for charitable or other purposes, the rules are upheld. But where no-solicitation rules are applied only as to union activity while other types of solicitation have gone unchallenged by the employer, the inference arises that the rules are not being used simply to serve the ends of plant order and production.

The record presented to us is one of an employer permitting solicitation on working time except where union activity is concerned. The Board concluded that this would not do. The record is ample under the substantial evidence on the record considered as a whole rule to warrant the conclusion.

The petition to review and set aside is denied; the petition to enforce is granted.

---

3. The rule was not posted permanently. It was not contained in a rule book nor was it an integral part of employee orientation. The company practice was to pro-mulgate rules by posting them on a bulletin board for a short period of time even though its work force turnover was substantial.