**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DOWELL DIVISION OF the DOW CHEMICAL COMPANY, Respondent.**

No. 27714.

United States Court of Appeals Fifth Circuit.

Dec. 22, 1969.

Marcel Mallet-Prevost, Asst. General Counsel, NLRB, Douglas L. Leslie, Atty., Washington, D. C., Elmer P. Davis, Director, Region 16, NLRB, Fort Worth, Tex., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Robert A. Giannasi, Atty., for petitioner.

J. H. Hanes, Wayne Hancock, Midland, Mich., Max D. Rizley, Tulsa, Okl., Karl H. Mueller, Mueller & Mueller, Fort Worth, Tex., for respondent.

Before WISDOM, THORNBERRY and SIMPSON, Circuit Judges.

PER CURIAM:

In March of 1966, the Union [1] made an effort to organize the Company's em-

1. The Oil, Chemical & Atomic Workers International Union, AFL-CIO.

ployees in its Midland, Texas district. The Company employed 147 full time service equipment operating and maintenance employees in the district. The Union obtained over a hundred authorization cards, and requested the Company to recognize it as the employees' bargaining representative. The Company refused. An election was scheduled for June 2, 1966.

During the pre-election campaign the Company sent three different letters to employees at their homes. The first letter contained the assertion that the Union "would not help the individual in terms of pay and benefits * * * and it will definitely cost all employees something—perhaps a great deal." The Board argues that the Company's letter contained unsupported threats to job security and loss of benefits, and that such threats, combined with statements that the Company had the power to control these benefits and suggestions that unionization would be futile, are the kinds of "conscious overstatements" that this Court should condemn.

The Company's second letter warned employees, in the course of a hypothetical question, to "stick together" and vote the Union out, or else employees are "going to be made to suffer because of the actions of a few who have been misled into supporting and working for the union." The letter asserted that if the Union were voted in there would be loss of jobs by virtue of an inevitable strike and a loss of customers.

The third letter referred again to job security and attacked, without explanation, the Union as threatening such security and asserted that the Union would bring "problems."

On June 2 the election was held and the Union lost. The Union filed objections to the election and the Board set aside the election on the grounds that the Company's letters were coercive. The Board found that the Company, through the three letters, threatened reprisals and warned of loss of benefits if the employees chose the Union, all this in violation of section 8(a) (1) of the Act. The Board's order directs the Company to cease and desist from its unfair labor practices and to post appropriate notices and directs the Regional Director to proceed with the second election as previously directed by the Board in its representation proceeding. This case is before this Court on application of the Board pursuant to section 10(e) of the Act for enforcement of its order issued against the Company on May 31, 1968.

Our standard of review is a narrow one. We must determine whether substantial evidence on the record as a whole supports the Board's finding that the Company violated section 8(a) (1) of the Act by threatening employees with economic reprisals and warning them that they would suffer loss of benefits if the employees chose the Union as their bargaining representative.

In a recent case, NLRB v. Gissel Packing Co., 1969, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, Chief Justice Warren, speaking for the Court, stated:

> [The employer] may even make a prediction as to the precise effects he believes unionization will have on his company. In such a case, however, the prediction must be carefully phrased on the basis of objective fact to convey an employer's belief as to demonstrably probable consequences beyond his control or to convey a management decision already arrived at to close the plant in case of unionization. * * * *If there is any implication that an employer may or may not take action solely on his own initiative for reasons unrelated to economic necessities and known only to him, the statement is no longer a reasonable prediction based on available facts but a threat of retaliation based on misrepresentation and coercion, and as such without the protection of the First Amendment.* We therefore agree with the court below that "conveyance

of the employer's belief, even though sincere, that unionization will or may result in the closing of the plant is not a statement of fact unless, which is most improbable, the eventuality of closing is capable of proof." (Emphasis added).

 After a careful reading of the entire record and a study of the three letters, we have concluded that there is substantial evidence to support the finding of the Board. Because of the wording of the letters, the Company's suggestions of economic harm due to unionization had the natural tendency to imply retaliation for supporting the Union since they were not based on "demonstrably probable consequences beyond [its] control." Since the Company emphasized that it alone controlled the benefits of the employment relationship that were threatened by unionization, the employees could have reasonably inferred that their employer was willing to use its economic power to see that its dire predictions came true. The three letters sent out by the Company contained "conscious overstatements [the Company had] reason to believe [would] mislead [its] employees," NLRB v. Gissel Packing Co., *supra,* and therefore the order of the Board must be

Enforced.