**HOSIERY CORPORATION OF AMERICA, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 13414.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1970.

Decided Feb. 26, 1970.

Thos. C. Bradley, Jr., Spartanburg, S. C., (Erwin & Bradley, Spartanburg, S. C., on brief), for petitioner.

Hans J. Lehmann, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., and Lawrence I. Kipperman, Attys., N. L. R. B., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and BOREMAN and BUTZNER, Circuit Judges.

BOREMAN, Circuit Judge:

Hosiery Corporation of America (hereafter Hosiery or the Company) petitions this court to review and set aside an order of the National Labor Relations Board (hereafter Board). The Board has countered by seeking approval and enforcement of its decision and order.[1] The Board held Hosiery's no-solicitation rule invalid and ordered the reinstatement of an employee who had been discharged for violating the rule.

On January 30, 1968, Hosiery posted a no-solicitation notice which, in part, was as follows:

"No person will be allowed to carry on Union organizing activities in the Plant during working hours. Anybody who undertakes to do so and who thereby interferes with his own work or the work of others will be discharged."

This notice was not posted until after the Company had knowledge that a union campaign to organize the Company's employees was under way.

After the notice was posted Hosiery continued its long-standing policy of permitting its employees to purchase its hosiery products at a discount, orders for which were taken and filled approximately once a month. Hosiery also continued to receive donations to a "flower fund" which had been handled by the Company for a long time at the request of the employees.

It is uncontroverted that the discharged employee violated the posted no-solicitation rule on two occasions; she was given a disciplinary lay-off of one week for the first violation and was discharged for the second.

The trial examiner recommended dismissal of the complaint against Hosiery in its entirety based upon his findings and conclusions that the no-solicitation rule was not promulgated for a discriminatory purpose or solely to prevent union organization and that the operation of the "flower fund" and the selling of hosiery at a discount were not "solicitations." A three-member panel of the Board, by a 2–1 vote, reversed the examiner and concluded that the no-solicitation rule interfered with the employees' right of self-organization and was therefore a violation of § 8(a) (1)[2] of the National Labor Relations Act, as amended, and that the discharge of the employee for violating the no-solicitation rule was a discriminatory discharge and therefore a violation of §§ 8(a) (1) and 8(a) (3)[3] of the Act. The order directs Hosiery to cease and desist from the unfair labor practices found, and, in any other manner, from interfering with, restraining or coercing employees in the exercise of their statutory rights. Further, Hosiery was ordered to offer to re-

1. 175 NLRB No. 31.

2. 29 U.S.C. § 158(a) (1).

3. 29 U.S.C. § 158(a) (3).

instate the discharged employee and to compensate her for loss of pay.

◼ By statute,[4] this court's scope of review of an administrative agency's decision is limited to determining whether there is *substantial evidence on the record considered as a whole to support that decision.* This court is not permitted to substitute its judgment for that of the Board in a case in which the evidence would permit a different conclusion, even where the court would have decided the case differently had the matter been before it de novo. N. L. R. B. v. A. S. Abell Co., 327 F.2d 1 (4 Cir. 1964).

However, in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), the Supreme Court made it clear that a court of appeals is not to abdicate its conventional judicial function to assure that the Board "keeps within reasonable grounds." The Court stated, at p. 490, 71 S.Ct. at p. 466:

"* * * [C]ourts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. *That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals.* The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." (Emphasis added.)

This court has had occasion to heed the Supreme Court's admonition in reviewing a decision of the Board in N. L. R. B. v. Threads, Inc., 308 F.2d 1, 7 (4 Cir. 1962), where we said:

"We believe * * * that we are warranted in following the principles announced in Universal Camera as a guide in reviewing such cases as the one before us. We have examined and considered the whole record, not only all evidence which in and of itself would justify the Board's decision but also contradictory evidence or evidence from which conflicting inferences could be drawn."

The holdings in *Universal Camera* and *Threads* as to scope of review were approved and followed by this court in N. L. R. B. v. A. S. Abell Co., 327 F.2d 1, 5, *supra.*

◼ Upon examining the record here, and considering it as a whole, we reach the conclusion that the Board's action was unreasonable, arbitrary, and unsupported by substantial evidence.

The Board has held, with subsequent court approval, that a rule limiting union activity on company premises to nonworking time is presumed valid in the absence of evidence that it was adopted for a discriminatory purpose. Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 803 n. 10, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), quoting from Matter of Peyton Packing Co., 49 NLRB 828, 843–844 (1943); TRW, Inc. v. N. L. R. B., 393 F.2d 771, 772 (6 Cir. 1968). The Board restated this principle in its decision in the instant case but determined that the presumed validity of the rule was rebutted by three factors: (1) the rule was not promulgated until the Union had begun to organize; (2) the rule on its face prohibited only union organizing activities; and (3) the Company permitted "solicitations" of other kinds during work time.

The Board's argument that promulgation of the no-solicitation rule after the

4. 5 U.S.C. § 706 and 29 U.S.C. § 160(e).

Union had begun to organize invalidated the rule is unconvincing. Cases cited by the Board to support its position do not squarely decide that the timing of the notice alone could be a ground for invalidating an otherwise valid no-solicitation rule; instead those cases involved either no-solicitation rules which purported to prohibit solicitation during nonworking as well as working time or rules which were promulgated in a context of clear union hostility and where the companies were guilty of threatening or coercing employees, conducting other solicitations during working time, discriminatorily discharging employees, or committing other unfair labor practices. In the instant case the no-solicitation notice was applicable only during working time and it is uncontroverted that there were no allegations in the complaint or charges that the Company in any way violated the Act through any threats or promises to employees during the union organizing campaign, that five other unfair labor practice cases filed against Hosiery during this same period were dismissed by the Board or withdrawn by the Union for want of supporting evidence, and that there was no antiunion activity of any nature permitted in the plant during this period. Thus, the instant case is readily distinguishable from those cited by the Board. More recent cases have held that promulgation of such a rule after the beginning of a union's organization campaign does not rebut the presumption of validity of the rule. Serv-Air, Inc. v. N. L. R. B., 395 F.2d 557 (10 Cir. 1968); TRW, Inc. v. N. L. R. B., 393 F.2d 771 (6 Cir. 1968), *supra*. In Serv-Air, *supra* 395 F.2d at 560, the court said: "Standing alone, the fact that an organizational campaign may have begun before the rule was posted does not prove a discriminatory purpose." And in TRW, *supra* 393 F.2d at 774, the court stated:

"We fail to see how the timing of the bulletin under the circumstances here shown has any significant bearing on the issue to be resolved. If it was to be published at all, this was the logical time to do it. The company could well have considered that publication of such a rule prior to the receipt of the union's letter [announcing the commencement of the Union's organizing campaign] would be premature."

Each of these cases involved a situation which would have made the company's no-solicitation rule more suspect than in the instant case; in fact, in *Serv-Air* the company had been found guilty of interrogations, threats, discriminatory discharges, and a refusal to bargain. We hold, in accord with the view announced by the Sixth and Tenth Circuits, that timing alone will not invalidate an otherwise valid no-solicitation rule.

The Board found that the fact that the rule prohibited *only union activities* also rebutted the presumed validity of the rule. This finding is inconsistent with the Board's established policy (as stated in the Board's decision in this case) that a no-solicitation rule prohibiting union activities which is limited to employees' work time is *presumed valid*. Furthermore, there is testimony in the record that Hosiery already had a general no-solicitation rule in effect, although unfortunately this matter was not seriously pursued by either party as an issue in the case. In any event, it has been held that an employer may prohibit solicitation of union support during working time without forbidding other forms of solicitation, if the rule is not discriminatorily applied by permitting other forms of solicitation. Carter Carburetor Corp. v. N. L. R. B., 140 F.2d 714, 716 (8 Cir. 1944).

Next, contrary to the examiner's reported conclusion, the Board declared that the rule here challenged was invalid because Hosiery " * * * permitted solicitations of other kinds during work time." The so-called "solicitations" upon which the Board principally relies were (1) the operation of a "flower fund" by the Company to provide flowers for sick or deceased employees or members of employees' families and (2) permitting monthly purchases of the Company's product—hosiery—by employees at a dis-

count. The record is uncontroverted that the Company handled the "flower fund" only upon the request of the employees themselves and as an accommodation to them. The hosiery sales were allowed approximately once a month, at reduced prices, and employees were not required, urged or solicited to make such purchases. These operations, characterized by the Board as "solicitations," in reality were nothing more than fringe benefits for the employees. We think it illogical to hold that these services rendered by Hosiery are "solicitations" and evidence of discrimination on the part of Hosiery in promulgating its rule against union solicitation. *See* TRW, Inc. v. N. L. R. B., 393 F.2d 771, 774 (6 Cir. 1968), *supra.* Indeed, as counsel for Hosiery pointed out, had Hosiery discontinued such long-standing services to the employees during the union organization campaign it might well have been charged with an unfair labor practice.

The Board relies upon several cases for the proposition that similar operations have been found to be solicitations in other cases. An examination of these cases reveals that they all involved situations in which the court found numerous other solicitations permitted by the companies, such as sales of candy, Christmas paper, cosmetics, tack hammers, and Girl Scout cookies, as well as innumerable charitable solicitations, church fund drives, sports pools, raffles, etc. Most of these cases also involved situations where the companies attempted to prohibit union solicitation while at the same time permitting antiunion solicitation, coercion and threatening of employees, and other affirmative acts demonstrating a discriminatory purpose in promulgating the no-solicitation rules. In the instant case, the services provided the employees were for their benefit. It is undisputed that Hosiery permitted no antiunion solicitation and that it was not guilty of any other unfair labor practices. Thus, the Board's conclusions that the hosiery sales and "flower fund" operation were "solicitations" cannot be justified on this record.

We hold that, under the facts and circumstances here, the rule prohibiting solicitation of union support was valid. The clear and undisputed violation of the valid no-solicitation rule was sufficient cause for discharge.

Enforcement of the Board's order will be denied.