NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SHEPHERD LAUNDRIES CO., Respondent.

No. 30129.

United States Court of Appeals, Fifth Circuit.

April 15, 1971.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Edward Wendel, Atty., N.L.R. B., Washington, D. C., Clifford Potter, Director, Region 23, N.L.R.B., Houston, Tex., for petitioner.

W. D. Deakins, Jr., John H. Smither, Houston, Tex., for respondent.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

DYER, Circuit Judge:

The National Labor Relations Board here petitions for enforcement of its order against Shepherd Laundries Company.[1] Approving the rulings of its trial examiner, the Board determined that Shepherd Laundries violated the National Labor Relations Act § 8(a) (1) and (3), 29 U.S.C.A. § 158(a) (1), (3). It ordered the Company to cease and desist from unfair labor practices and to take appropriate affirmative action, including reinstatement with back pay of three wrongfully discharged employees. We enforce in part.

The Board's conclusions with regard to the Company's violations of section 8(a) (1) during a union[2] organizational campaign give us little pause. Considered as a whole, the record includes substantial evidence that the Company discriminatorily enforced a facially valid no-solicitation rule posted in the plant;[3] that the Company promulgated an unlawful no-solicitation rule

1. The Board's decision and order are reported at 176 N.L.R.B. No. 113.

2. International Union of Laundry & Dry Cleaning Workers, AFL–CIO.

3. See, e. g., Ridgewood Management Co. v. NLRB, 5 Cir. 1969, 410 F.2d 738, 740, cert. denied, 396 U.S. 832, 90 S.Ct. 87, 24 L.Ed.2d 83; William L. Bonnell Co. v. NLRB, 5 Cir. 1969, 405 F.2d 593, 595.

which was not confined to working times or areas and which was not proved necessary for plant discipline or production;[4] that the Company's officers informed employees that union membership would be futile and would result in protracted bargaining, strikes, violence, and loss of pay;[5] that company officers and agents encouraged employees to withdraw from the Union and assisted them in so doing;[6] and that the Company created an impression of surveillance.[7]

■ Furthermore, the Board correctly concluded that the Company violated sections 8(a)(3) and (1) of the Act by discharging Sadie Smith and Delores Berry for solicitation during an organizational campaign. Each of these discharges, as well as that of Darlene Brown, occurred on September 20, 1968.

Smith, a company employee since 1961, was discharged by Supervisor Cates, who explained that he had heard she was soliciting for the Union on company time. During her lunch break on September 12, Smith had distributed union cards. After work that day, she spoke with another employee, Dorothy Faulk, about the Union. The following day Smith approached Faulk twice—first to ask her opinion about the Union and later, after learning that Faulk had reported Smith's questioning to her supervisor, to tell her, in strident colloquialisms, that she should not have reported the incident. Before the Board, the Company contended that there were other grounds, besides soliciting, for Smith's discharge. It averred that her verbosity impaired the efficiency of her department and disrupted other employees' work. Neither of these grounds was established by proof.

Berry, a company employee since 1956, was discharged by Foreman Alsobrook, who informed her that she had a poor absentee record, had reported late for work, and had solicited on the job. During her employment with the Company, Berry had taken three six-week pregnancy leaves. The Company had never taken disciplinary action for alleged absenteeism. Nor had Berry been reprimanded for tardiness. Indeed, Alsobrook admitted that she was a good employee, whose tardiness problem had been solved a month prior to her discharge. Only one incident, a conversation with a company truck driver allegedly during a coffee break, supported the solicitation charge. Before the Board, the Company asserted that Berry. had also harassed other workers in her department and had been responsible for an increase in claims. The evidence and testimony supporting these contentions is scant, and was given little weight by the Board.

In contrast to the action taken against Brown and Berry with respect to purported violations of the no-solicitation rule, the Company did not impede another employee Rayson, who circulated an anti-union petition. The Board found that Rayson had distributed the petition during working hours without written permission.

In light of these findings, it becomes clear that Sadie Smith and Delores Ber-

4. *See, e. g.,* NLRB v. Mid State Sportswear, Inc., 5 Cir. 1969, 412 F.2d 537, 538.

5. *See* NLRB v. Gissel Packing Co., 1969, 395 U.S. 575, 618–620, 89 S.Ct. 1918, 23 L.Ed.2d 547; NLRB v. Varo, Inc., 5 Cir. 1970, 425 F.2d 293, 299–301; NLRB v. Dowell Division, Dow Chemical Co., 5 Cir. 1969, 420 F.2d 480, 481–482. *Compare* Bok, "The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act," 78 Harv.L.Rev. 38, 66–106 (1964), *with* Platt, "The Supreme Court Looks at Bar-

gaining Orders Based on Authorization Cards," 4 Ga.L.Rev. 779, 797–800 (1970).

6. *Compare* NLRB v. Movie Star, Inc., 5 Cir. 1966, 361 F.2d 346, 348–349, *with* Hosiery Corp. of America v. .NLRB, 4 Cir. 1970, 422 F.2d 784, 787–788, and NLRB v. River Togs, Inc., 2 Cir. 1967, 382 F.2d 198, 200.

7. *See* Hendrix Manufacturing Co. v. NLRB, 5 Cir. 1963, 321 F.2d 100, 104 n. 7.

ry were discharged because of union activities, which contravened the Company's discriminatory no-solicitation rules. Substantial evidence sustains the Board's position in this regard, even though the Company might have had other, valid reasons for the firings. NLRB v. Standard Forge & Axle Co., 5 Cir. 1969, 420 F.2d 508, 511, cert. denied, 400 U.S. 903, 91 S.Ct. 140, 27 L.Ed. 2d 140; see NLRB v. American Art Industries, Inc., 5 Cir. 1969, 415 F.2d 1223, 1228, cert. denied, 397 U.S. 990, 90 S.Ct. 1122, 25 L.Ed.2d 397; NLRB v. Mid State Sportswear, Inc., 5 Cir. 1969, 412 F.2d 537, 538–539; William L. Bonnell Co. v. NLRB, 5 Cir. 1969, 405 F.2d 593, 595; NLRB v. Longhorn Transfer Service, Inc., 5 Cir. 1965, 346 F.2d 1003, 1006.

 However, substantial evidence does not support the trial examiner's and the Board's finding that the Company discharged Darlene Brown because of union activity. Brown, a company employee since 1963, was discharged by Supervisor Madsen, who told her that she had often been tardy, had failed to phone when absent, had talked with people in other departments, and had falsified company records. The record discloses that Brown admitted frequent tardiness and falsification of timesheets. She realized that her actions were wrong, and Madsen had previously reprimanded her. Moreover, Madsen had received complaints that Brown was interfering with employees in other departments while performing her duties in other areas of the plant. Finally, Madsen did not mention the Union or solicitation as bases for the discharge. During the discharge interview, when Madsen told Brown that other supervisors had complained about her incessant conversations, Brown volunteered information that she had been selling deodorizers. Thus, although "solicitation" may have been a causative factor with respect to Brown's discharge, the solicitation involved pertained to products, not the Union. "Management can discharge for good cause, or bad cause, or no cause

at all * * * [unless] the real motivating purpose is to do what Section 8(a) (3) forbids." NLRB v. McGahey, 5 Cir. 1956, 233 F.2d 406, 413; accord, NLRB v. Longhorn Transfer Service, Inc., supra, 346 F.2d at 1006. Manifestly, in the factual context of this case, the Company's anti-union animus displayed on other occasions cannot save Brown's job, for her discharge was unrelated to union membership or activity.

We enforce the Board's order with respect to the unfair labor practices in violation of section 8(a) (1), and with respect to the wrongful discharges of employees Smith and Berry in violation of sections 8(a) (3) and (1) of the Act. We deny enforcement of the Board's order insofar as it requires reinstatement with back pay of employee Brown.

Enforced in part and denied in part.