NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LITHO PRESS OF SAN ANTONIO, Respondent.

No. 74–3430
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

April 28, 1975.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., et al.(5th Cir. 1970) 431 F.2d 409, Part I.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Louis V. Baldovin, Jr., Director, Region 23, N. L. R. B., Houston, Tex., for petitioner.

Eugene Cotton, Irving M. King, Chicago, Ill., for Graphic Arts.

James F. Gardner, San Antonio, Tex., John H. Doesburg, Phoenix, Ariz., for respondent.

Before WISDOM, BELL and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The National Labor Relations Board (Board) petitions for enforcement of its order that Litho Press Company cease and desist its violations of Section 8(a)(1) of the Act, which allegedly occurred during an unsuccessful attempt by Graphic Arts International Union (AFL–CIO) to organize the company. The issue presented is whether substantial evidence on the record as a whole supports the Board's finding that the company interfered with, restrained, and coerced its employees in violation of Section 8(a)(1). We enforce.

The Board found these violations: (1) coercive interrogation of employees concerning union activities; (2) threatening employees with loss of overtime; (3) encouraging formation of a grievance committee rather than unionizing; and (4) barring an off-duty employee from passing out union handbills. The first three of these violations purportedly occurred at a meeting of the employees of the company.

The following facts were found by the administrative law judge and adopted by the Board. Larry Pettit (the sole supervisor of Litho Press' plant and second in the management hierarchy to the president of the company) and Roy Bingham, an employee, directed all Litho Press employees to attend a meeting conducted by Bingham on company time. Pettit sat next to Bingham at the meeting. Bingham opened the meeting by stating that since he had been left out of the Union's activity in the plant, he wanted to find out what the other employees knew. After several minutes of silence Bingham asked if anyone had been contacted by the Union. Three out of 50 employees raised their hands. Bingham stated that he was against the Union

and if the Union came in, the employees would not be able to work overtime. Further, he stated that he did not think the Union "would work", and that if the employees wanted a change they should form a grievance committee to present their problems in a petition to the owner and the president. No one spoke in favor of the Union.

The Board contends that these facts sustained a finding of (1) unlawful interrogation by an employer concerning union activities under N. L. R. B. v. Varo, Inc., 425 F.2d 293, 298 (5th Cir. 1970); (2) a threat to deprive employees of existing overtime benefits to deter unionization under N. L. R. B. v. Kaiser Agriculture Chemicals, 473 F.2d 374, 381 (5th Cir. 1973); and (3) that Litho Press unlawfully urged its employees to repudiate an outside union and form their own under N. L. R. B. v. Birmingham Publishing Co., 262 F.2d 2, 7 (5th Cir. 1958).

The Board found that Bingham was not an agent of the company. However, it found that Pettit, a supervisor, directed the employees to attend a.d was present at the meeting. The meeting was held during company time and several employees asked Pettit for permission to leave early, indicating that they did not feel free to leave. Thus the Board found that Pettit, by not disavowing Bingham's conduct or repudiating his representations, ratified and adopted Bingham's statements.

The proof further indicated that Bingham was performing functions which would reasonably cause other employees to associate him with management. Bingham did most of his work in an office next to that of the president, although he worked part-time, as a cameraman. Bingham did not wear a uniform as did the other employees. Litho Press' president testified that Bingham did his "leg work". One employee testified that Bingham had the power to hire and fire her. Bingham was made head of a department soon after the meeting.

Litho Press contends the facts to be as follows. Bingham was a camera operator, not a representative of management.

The meeting was suggested by a group of employees to discuss the pros and cons of unionizing. Bingham was only one of five employees who instigated the meeting. He was chosen as the chairman because he was the most articulate. This group of employees informed the other employees of a meeting to be held in the plant at 4 P.M. that afternoon to discuss the Union. Opening the meeting, Bingham stated that he understood that there was considerable interest in the Union and asked if anyone had anything to say. One employee suggested that the plant go on two shifts to cut down on the amount of overtime. Another employee stated that he liked overtime. Bingham did not comment on the issue of overtime, although he did suggest that a grievance committee be formed. The meeting ended soon thereafter. Neither the owner of the company nor its president was present at the meeting. Pettit, the foreman who was present, made no comment.

Litho Press criticizes the reliance of the administrative law judge on the testimony of one witness that Bingham threatened loss of overtime, when other witnesses testified that he said nothing about overtime. Further, Litho Press contends that Bingham, who made the suggestion of forming a grievance committee, was a voting employee in the unit and was expressly found not to be an agent of management. It is therefore argued that there was nothing to be ratified and adopted by the company, because nothing was said that Pettit should have disavowed.

Assuming Bingham's identification with management was not established, Pettit's presence next to Bingham at the meeting under the circumstances found by the Board is sufficient to impute to management the statements the administrative law judge found Bingham made. *Cf.* N. L. R. B. v. American Casting Service, Inc., 365 F.2d 168 (7th Cir. 1966). A determination of whether the first three alleged violations occurred thus involves a problem of witness credibility. Such credibility resolutions can-

not be disturbed unless they are unreasonable. N. L. R. B. v. Varo, Inc., 424 F.2d 293, 297–98 (5th Cir. 1970).

■ The facts leading to the fourth alleged violation are not disputed. Tipton, an employee on vacation, was handing out handbills in the driveway of the plant along with two union representatives. Two employees leaving work stopped to talk to Tipton. Thomas, the owner of Litho Press, came out of the plant and told the group: "If you girls are talking union talk, get off of my property." [1] The activity took place on the employee's own time, in a non-work area, and Thomas' actions were not based on a legitimate employer interest. Since the prohibition was expressly applied to "union talk", it was discriminatory. William L. Bonnell Co. v. N. L. R. B., 405 F.2d 593, 595 (5th Cir. 1969). Thomas thus enunciated an unlawful no-distribution and no-access rule.

■■ Litho Press contends that there was no evidence that Thomas knew that Tipton was an employee, and that a non-employee can be barred from company property where other means of communication exist. However, Section 8(a)(1) is concerned with the effect of the employer's conduct, not his state of mind. Welch Scientific Co. v. N. L. R. B., 340 F.2d 199, 203 (2d Cir. 1965).

■ Alternatively, Litho Press asserts that Tipton should be treated as an employee on vacation whose rights should be distinguished from those accorded an active employee. While such a distinction might be appropos if special circumstances, such as security or productivity, demand it; [2] this circuit recognizes no such differentiation as to one in Tipton's status. See Republic Aluminum Co. v. N. L. R. B., 394 F.2d 405 (5th Cir. 1968). See also Westinghouse Electric Corporation, Tampa Division, 119 N. L. R. B., 783, 786–87 (1972).

■ As another alternative, Litho Press maintains that Thomas' statement to Tipton was a mere request to move back to the sidewalk. There was no threat of enforcement nor were any employees working in the plant told that they could not solicit except on company time and, given these circumstances, no Section 8(a)(1) violation was shown because there was no evidence of the promulgation and enforcement of a rule by sanctions. Leaving aside the fact that Thomas' stern remark may have carried an implied threat of enforcement, it was specifically directed to "union talk" alone. It is clearly distinguishable from written rules validly regulating conduct of off-duty employees and non-employees and from statements which undertake to construe or apply such valid regulations. Cf. Kaufman-Straus Co., 137 N.L.R.B. 151 (1962). It is not necessary for a sanction to be imposed for violation of an extemporaneous command of this sort to constitute discrimination. See Amalgamated Clothing Workers of America v. N. L. R. B., 124 U.S.App.D.C. 365, 365 F.2d 898, 911 (D.C. Cir. 1966).

Litho Press finally asserts that the Board erred in setting aside the election, since the results were not changed by any of the cited occurrences. We decline to reach this contention since the order for a second election is not before us.

Enforced.

---

1. Another witness quoted the statement as: "If you are discussing union business, please get off my property or get off my property and stay off my property." Mr. Thomas did not testify.

2. See McDonnell Douglas Corp. v. N. L. R. B., 472 F.2d 539 (8th Cir. 1973); and Diamond Shamrock Co. v. N. L. R. B., 443 F.2d 52 (3d Cir. 1971).