**HUGHES PROPERTIES, INC., d/b/a/ Harolds Club, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 83–7876, 84–7026.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1984.

Decided April 22, 1985.

---

Kenneth W. Anderson, Michael McNamara, Los Angeles, Cal., for petitioner.

John Rubin, N.L.R.B., Washington, D.C., for respondent.

Before SCHROEDER, FLETCHER, and CANBY, Circuit Judges.

SCHROEDER, Circuit Judge.

Hughes Properties, Inc. (the Employer) petitions for review of an order of the National Labor Relations Board requiring it to cease and desist from prohibiting union solicitation by its off-shift employees in one of its public bars. The Board filed a cross-application for enforcement of its order. We enforce the order.

. The Employer operates a large casino, known as Harolds Club, in Reno, Nevada. It had in force a rule barring (1) any solicitation by employees during working hours

and (2) distribution of literature by employees during working hours or at any time in areas open to the public. The episode which gave rise to these unfair labor practice charges occurred when an off-duty games dealer, Gary Fisher, who was also an official of the Professional Association of Gaming Employees (the Union), discussed union membership with six other games dealers.[1] The Union was attempting to organize games dealers. The discussion in question took place during off-duty time in a public bar which was adjacent to, and slightly raised from, the casino's gambling area. It was not unusual for off-duty employees to meet in the bar since the Employer, by giving employees free drink tokens, encouraged employees to spend off-duty time there. Fisher promoted the Union to the employees at his table and then passed around authorization cards. The Employer's floor manager interrupted the meeting and instructed Fisher to stop his activity or leave. After a brief discussion, Fisher left. The Union then filed an unfair labor practice charge with the Board claiming that the interruption violated section 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1).

We must decide, therefore, whether the Employer enforced and maintained an overly broad no-solicitation rule which interfered with the employees' rights to organize under section 7 of the NLRA, 29 U.S.C. § 157. Such issues arise with some frequency from clashes between employees asserting their rights to organize and employers asserting their rights to control their businesses. The long history of both Board and court decisions on employer no-solicitation policies bears witness to the tension between these two interests. The Supreme Court comprehensively reviewed this history in *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 492–93 & n. 11, 98 S.Ct. 2463, 2469–70 & n. 11, 57 L.Ed.2d 370 (1978).

Early in its administration of the NLRA, the Board fashioned general rules defining

---

1. The facts are set forth in greater detail in the Board's and Administrative Law Judge's deci-

sions which are reported at *Hughes Properties, Inc.,* 267 N.L.R.B. 1167 (1983).

the presumptive validity or invalidity of solicitation bans. The Supreme Court upheld the validity of these rules in *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 803 & n. 10, 65 S.Ct. 982, 988 & n. 10, 89 L.Ed. 1372 (1945). The Court acknowledged that Congress, in the Wagner Act, did not "undertake the impossible task" of setting rigid rules as to what constitutes an unfair labor practice. *Id.* at 798, 65 S.Ct. at 985, 89 L.Ed. 1372. Rather, the Act "left to the Board the work of applying the Act's general prohibitory language in the light of the infinite combination of events which might be charged as violative of its terms." *Id.* The Board thus adjusts and accommodates both the employees' rights to organize and the employer's right to maintain work discipline according to the particular circumstances. *Id.*

■ The basic presumptive rules that *Republic Aviation* approved are quite simple. A ban on all solicitation during working hours is presumptively valid, but a ban on all solicitation during non-working hours is presumptively invalid. *Id.* at 803 & n. 10, 65 S.Ct. at 988 & n. 10, 89 L.Ed. 1372 (citing *Peyton Packing Co.*, 49 N.L.R.B. 828, 843–44, enf'd, 142 F.2d 1009 (5th Cir.), cert. denied, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 585 (1944), in which the Board's rule was originally announced). These straightforward rules, however, have been embellished. Thus, the Board repeatedly has upheld a ban on solicitation, even during non-working hours, when the solicitation occurs on the selling floor of a department store or restaurant. *May Department Stores Co.*, 59 N.L.R.B. 976 (1944), enf'd as modified, 154 F.2d 533 (8th Cir.), cert. denied, 329 U.S. 725, 67 S.Ct. 72, 91 L.Ed. 627 (1946); *Goldblatt Brothers*, 77 N.L.R.B. 1262 (1948); *Marriott Corp., (Children's Inn)*, 223 N.L.R.B. 978 (1976). At the same time, the Board has held that a ban on solicitation during non-working hours in restaurants or cafeterias of department stores is overly broad when the solicitation is consistent with non-employee use of the area and is not disruptive. *See Ameron Automotive Centers*, 265 N.L.R.B. 511 (1982); *Montgomery Ward & Co.*, 263 N.L.

R.B. 233 (1982), enf'd as modified, 728 F.2d 389 (6th Cir.1984); *Montgomery Ward & Co.*, 256 N.L.R.B. 800 (1981), enf'd, 692 F.2d 1115 (7th Cir.1982), cert. denied, 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983); see also *Marshall Field & Co.*, 98 N.L.R.B. 88 (recognizes interest of restaurants to prevent business disruption and allows restrictions "designed to insure that solicitation [is] carried on only as an incident to the normal use of the restaurant."), enf'd as modified, 200 F.2d 375 (7th Cir.1952).

In the hospital context, the Board applied these principles to hold that a ban on employee solicitation in a cafeteria during non-working hours was overly broad. *Beth Israel Hospital*, 223 N.L.R.B. 1193 (1976), enf'd in part, 554 F.2d 477 (1st Cir.1977), aff'd, 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978). The Supreme Court approved the Board's ruling, stressing the remoteness of the cafeteria from patient care and the heavy use of the cafeteria by hospital employees. *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978).

In this case, the Administrative Law Judge viewed the bar area as analogous to the selling floor of a department store and applied *Marshall Field* to hold that the ban on solicitation and its enforcement in the bar area was valid. The Board, without disputing the ALJ's factual findings, applied the same case differently. It viewed the bar area as analogous to a restaurant within a retail sales operation. It held that a ban on solicitation could not be enforced here because the solicitation was conducted in a manner consistent with the purpose of the restaurant and the employees' conduct was not disruptive. 267 N.L.R.B. at 1167. Furthermore, the targets of the solicitation did not include on-duty restaurant employees who were serving customers. The Board applied its previous decisions in *Marshall Field* and *Ameron Automotive Centers* to hold that the employer's refusal to permit the solicitation in this case violated the Act.

The guiding principle the Board applied permits solicitation in a facility, as a restaurant, on an employer's premises so long as the solicitation comports with the normal use of the facility and is not disruptive. The Board correctly points out that its decision in this case is consistent with all of its decisions that have upheld enforcement of no-solicitation rules during non-working hours when working employees might be the target and hence service might be disrupted. *Marriott Corp.*, 223 N.L.R.B. 978 (1976); *Goldblatt Brothers*, 77 N.L.R.B. 1262 (1948); *May Department Stores Co.*, 59 N.L.R.B. 976 (1944), *enf'd as modified*, 154 F.2d 533 (8th Cir.), *cert. denied*, 329 U.S. 725, 67 S.Ct. 72, 91 L.Ed. 627 (1946). Its decision is also consistent with the decisions that have prevented enforcement of a ban on solicitation during off-duty hours where working employees were not the targets of the organizational effort. *Ameron Automotive Centers*, 265 N.L.R.B. 511 (1982); *Montgomery Ward & Co.*, 263 N.L.R.B. 233 (1982), *enf'd as modified*, 728 F.2d 389 (6th Cir.1984); *Montgomery Ward & Co.*, 256 N.L.R.B. 800 (1981), *enf'd*, 692 F.2d 1115 (7th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983); *Marshall Field & Co.*, 98 N.L.R.B. 88, *enf'd as modified*, 200 F.2d 375 (7th Cir.1952).

■ Our inquiry is limited to "whether the Board's factual findings are supported by substantial evidence on the record as a whole and whether the Board's application of those findings is rational and consistent with the Act." *Construction Erectors, Inc. v. NLRB*, 661 F.2d 801, 803 (9th Cir. 1981). Here, the parties do not dispute any factual findings, and so we look only to whether the Board's interpretation as applied to those facts is rational and consistent with the Act. *See, e.g., Financial Institution Employees of America v. NLRB*, 752 F.2d 356, 359–60 (9th Cir.1984). We conclude that it is. Our conclusion is consistent with the Seventh Circuit's decision in *Montgomery Ward & Co. v. NLRB*, 692 F.2d 1115, 1128 (7th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983). There, the court upheld the Board's ruling that an employer could not ban union solicitation of off-duty employees, even by non-employees, in a cafeteria open both to employees and the public.

The Employer argues that to approve the Board's decision in this case would conflict with our decision in *NLRB v. Silver Spur Casino*, 623 F.2d 571 (9th Cir.1980), *cert. denied*, 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981). Our review of Board and Supreme Court precedents in *Silver Spur* led us to conclude that in the particular context presented, the enforcement of a broad no-solicitation policy against the union in the public areas of a casino did not violate the NLRA. However, in that case, unlike this case, the union sought to organize culinary workers, waiters, and bartenders. Thus, the direct solicitation of off-duty employees in public areas could have been disruptive to the service of customers by the on-duty employees who were also targets of the organizational effort. *Silver Spur*, following *Beth Israel*, noted that the fact that the facility in question serves the public does not automatically allow an employer to impose a broad no-solicitation rule. 623 F.2d at 582. We also indicated that the ban on solicitation would have been invalid if the facility in question had been primarily an employee-service area. *Id.* at 583. *Silver Spur* is neither inconsistent with the Board's interpretation of the Act, which we follow in this case, nor in conflict with our decision here.

■ As an alternative basis for overturning the Board's decision, the Employer asks us to hold that even though the employees of the bar were not actually targets of the organizational effort, the Employer at the time was under the good faith impression that they might be, and, therefore, the Employer should not be guilty of an unfair labor practice. This was the alternative basis for the ALJ's decision. It is, however, contrary to settled authority; an employer's belief, whether reasonable or unreasonable, is not the determinative factor in deciding whether there has been an interference with employees' rights under

section 7. *NLRB v. Litho Press,* 512 F.2d 73, 76 (5th Cir.1975); *Montgomery Ward & Co.,* 263 N.L.R.B. 233, 233 n. 2 (1982), *enf'd,* 728 F.2d 389 (6th Cir.1984).

The petition for review is denied and the Board's order is enforced.